CHAMBLESS et al. v. CANNON, Sheriff, et al.

Civ. No. 312.

United States District Court
W. D. Arkansas, Texarkana Division.

Jan. 17, 1949.

Anglin & Jones, of Longview, Tex., Bartlett & Ferrell, of Linden, Tex., and Shaver, Stewart & Jones, of Texarkana, Ark., for plaintiffs.

Bruce T. Bullion, of Little Rock, Ark., E. K. Edwards, of De Queen, Ark., and George E. Steel, of Nashville, Ark., for defendants.

LEMLEY, Chief Judge.

This cause comes on for hearing and is submitted to the Court upon an agreed statement of facts and written briefs.

The plaintiffs, Orville L. Chambless, Grady H. King, and J. C. Anable, residents

886

of the State of Oklahoma, filed their bill in equity herein, against V. W. Cannon, Sheriff of Sevier County, Arkansas, Tom Holcomb, an officer of the Arkansas State Highway Patrol, and Otho A. Cook, Commissioner of Revenues of the State of Arkansas, to recover possession of 86 cases of whiskey of the value of more than $3,000, which said liquor was seized by the defendant Holcomb on June 15, 1948, in Sevier County, Arkansas, and which is now held by the defendant Cook as Commissioner of Revenues of the State of Arkansas, under the provisions of Act 423 of the General Assembly of the State of Arkansas for the year 1947, 4 Ark.Stats.1947, §§ 48-925, 926 and 929, and for an injunction to restrain the defendants from disposing of such liquors.

The pertinent facts, as stipulated, are as follows:

On June 15, 1948, the plaintiff, Anable, was transporting by a privately owned motor vehicle from Shreveport, Louisiana, to Oklahoma City, Oklahoma, through the State of Arkansas, 86 cases of whiskey, the property of Anable and the other plaintiffs. The liquor had been purchased in Louisiana and all federal and Louisiana state taxes thereon had been paid. As Anable reached the vicinity of Lockesburg, Sevier County, Arkansas, he was stopped by the defendant Holcomb, who searched his vehicle, seized the 86 cases of whiskey contained therein, and placed him under arrest, all on account of the fact that he held no permit to transport liquor from another state into or through the State of Arkansas, as required by Act 109 of 1935, as amended by Act 356 of 1941, 4 Ark.Stats. 1947, § 48-404. After Holcomb had seized the liquor, he turned it over to the Sheriff of Sevier County, Arkansas, who in turn delivered it to the Commissioner of Revenues at his office in the City of Little Rock, Arkansas. This delivery was made in two lots, 47 cases on June 30, 1948, and the remaining 39 cases on July 12, 1948. On July 2, 1948, this suit was filed by the plaintiffs, and summons was served on the Commissioner of Revenues on July 3, 1948. On July 2, 1948, the Commissioner, as required by said Act 423 of 1947, caused a notice of the seizure of the first lot of liquor to be

published in a Little Rock paper having a state-wide circulation. The notice described the property seized, and warned any person having any interest in the same to file his claim with the Commissioner within 30 days, or be forever barred. A similar notice was likewise published by the Commissioner when the second lot of liquor was received. The second notices required by said Act (as will hereinafter be noted) were likewise published.

The plaintiffs were not personally served with notice of the seizure and intended confiscation of their liquor, and the only notice they have had, other than the seizure itself, was through the publications of the aforesaid notices. They have neither entered their appearances before the Commissioner, nor filed any claim with him for the return of the liquor. On July 28, 1948, it was agreed between counsel for the plaintiffs and for the defendants that no action would be taken by the Commissioner with respect to the seized liquor pending the outcome of this case, and the Commissioner still has it in his possession.

It has been stipulated that none of the plaintiffs has ever applied for, or been issued, a permit by the Revenue Department of the State of Arkansas, to transport alcoholic beverages into, through, or out of the State of Arkansas, nor did any of them have such a permit at the time the liquor was seized.

The facts, as stipulated with respect to the search and seizure, tend to indicate that no probable cause existed therefor. However, the conclusion we have reached renders it unnecessary for us to pass upon that question.

The Arkansas statute, 4 Ark.Stats.1947, § 48-404, requiring a permit to transport liquor into the state provides that "It shall be unlawful for any person to ship or transport or cause to be shipped or transported into the State of Arkansas, any spirituous liquors * * * from points without the State, without having first obtained a permit from the Commissioner of Revenues * * *." A violation of the act is declared to be a misdemeanor and is punishable by a fine of not less than $500 or more than $1,000.

In Duckworth v. State, 201 Ark. 1123, 148 S.W.2d 656, it was held that this statute covers a through shipment. Hence, since plaintiffs did not have a permit to transport the seized liquor into or through the state, the transportation thereof was illegal, and Anable, at least, was subject to prosecution in the state courts for such transportation.

The statute providing for seizure and forfeiture of liquors, Act 423 of 1947, 4 Ark.Stats.1947, § 48-925, declares that all spirituous liquors or beverages found in the possession of any person violating any alcoholic control law of the state are to be considered contraband, and shall be seized and forfeited.

This statute then sets up a detailed procedure for the forfeiture of seized liquors. Among other things, it provides that all such liquors shall be turned over to the Commissioner, who shall, within three days after receipt thereof, cause to be published in a newspaper having statewide circulation, a notice, which notice is required to appear in said newspaper twice within a 30 day period, 15 days apart, describing the seized liquor, setting forth the approximate retail value thereof, the name, if known, of the person from whom it was seized, and the place of seizure, and warning the owners that the seized liquor will be sold by the Commissioner at the expiration of 30 days from the first publication of the notice. The statute also provides that any person claiming any interest in the liquor may file a claim therefor with the Commissioner within the 30 day period of notice, which shall set forth the nature of his claim and contain a request for a hearing before the Commissioner to determine claimant's right or interest in the seized liquor. The Commissioner is required to hold a hearing within 10 days, and at such hearing testimony is to be taken, the witnesses being duly sworn and their testimony taken down in shorthand; the Commissioner within 15 days thereafter must file his written findings and his order. The findings and order are to be based "upon the testimony so presented." The statute gives the claimant a judicial review of the Commissioner's ruling upon matters of law, but accords finality to his findings of fact. An appeal from the Commissioner's ruling may be taken in the first instance to the Circuit Court of Pulaski County, Arkansas, where the Commissioner's office is located, and there heard upon the transcript of the record of the hearing before the Commissioner, including the testimony taken before him. It is provided that the Circuit Court shall hear no new evidence, and shall render its judgment only on errors of law. An appeal to the Supreme Court of Arkansas may be taken from the rulings of the Circuit Court. It is further provided that, after condemnation, the seized liquor shall be sold at public auction to licensed liquor dealers, and the proceeds shall be paid into the State Treasury.

As hereinbefore indicated, the plaintiffs brought their action in this Court in the first instance, and have completely ignored the administrative procedure set up by this statute.

Plaintiffs proceed in this Court upon two theories; first, that the Arkansas statute, which requires a person desiring to transport liquor through the state to obtain a permit and which declares liquor being so transported without such permit to be contraband and subject to confiscation, is unconstitutional as imposing an unreasonable burden upon interstate commerce; and, secondly, that the search of Anable's truck without a warrant and without probable cause to believe that it contained contraband, and the subsequent seizure thereof, were violative of rights guaranteed plaintiffs by both the Constitution of the United States and the Constitution of the State of Arkansas.

With reference to the first theory, the right of the State to reasonably regulate the transportation of intoxicating liquors within her borders, including the right to require the obtaining of a permit for such transportation, has been expressly recognized by the Supreme Court of the United States in Duckworth v. State of Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144; See also Carter v. Commonwealth of Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605; cf. Johnson v. Yellow Cab Co., 321 U.S. 383, 64 S.Ct. 622,

88 L.Ed. 814. Therefore, plaintiffs' first contention cannot be sustained.

■ Plaintiffs' second theory, to the effect that the search and seizure being unlawful, they have a right in this action to recover their liquor, will likewise be rejected for the reason that this Court, sitting as a court of equity, declines to assume jurisdiction to grant the relief prayed for. This conclusion is based on several grounds:

By Act 423 of 1947, 4 Ark.Stats. § 48-920 et seq., the pertinent provisions of which we have hereinbefore noted, the Legislature of the State of Arkansas has provided a complete administrative procedure for the adjudication of claims to liquor seized as contraband, and owners of liquor seized by Arkansas authorities cannot ignore that administrative process set up by the Legislature for the determination of their rights, and come into this court in the first instance seeking relief. This procedure was available to the plaintiffs, and had they availed themselves of it, any errors of state law which the Commissioner might have made would have been reviewable by the Supreme Court of Arkansas, and any substantial federal rights could have been protected by the Supreme Court of the United States upon review. Cf. Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Spielman Motor Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322. To grant the relief sought by plaintiffs would amount to a nullification of the provisions of Act 423 of 1947, at least as far as non-residents of the state are concerned, and would seriously impede and interfere with the legitimate efforts of Arkansas state officials to carry out the policy of the state with respect to intoxicating liquors.

Moreover, here the liquor is in the physical possession of the Commissioner of Revenues of the State of Arkansas, who is the administrative officer charged with the duty of conducting a hearing to determine whether or not it should be confiscated; under Arkansas law a proceeding to condemn liquor is one in rem, Leach v. Cook, Ark., 202 S.W.2d 359, and the Commissioner's possession should not be disturbed by a process from this Court. Cf. Ferguson v. Josey, 70 Ark. 94, 66 S.W. 345, and O'Neal v. Parker, 83 Ark. 133, 103 S.W. 165.

In Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 645, 85 L.Ed. 971, federal courts were directed to avoid needless friction with state policies, and to practice "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wide discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." It was there said, "this use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers." 312 U.S. at pages 500, 501, 61 S.Ct. at page 645.

Cartlidge v. Rainey, 5 Cir., 168 F.2d 841, 845, is a very similar case to the instant one. In that case liquor enroute from Louisiana to Oklahoma was seized by State officers in Texas. Suit was filed in Federal District Court to recover possession thereof on the ground that, as here, diversity of citizenship existed between plaintiffs and defendants and the liquor was worth more than $3,000, and also on the ground that material federal questions, similar to the ones raised in the case at bar, were involved. Two days after the suit was filed in the federal court, the Texas authorities filed suit to condemn the liquor in the Texas state courts; six days after the suit was filed in the state court, the federal court issued a temporary restraining order enjoining the destruction of the liquor. On appeal, the United States Court of Appeals reversed the District Court on the ground that the state court had acquired jurisdiction of the property involved, which jurisdiction related back to the time of the seizure, and, therefore, the federal court had no right to interfere with the possession of the state court; and on the further ground that the final relief sought, if granted, would not only interfere with the state court's possession of the liquor, but would enjoin state officers from preventing a continuation of the criminal act of transportation of liquor without a permit; and in this

connection the Court of Appeals said, "It is well settled that equity will not lend its aid to the perpetration of criminal acts. Therefore, there was no equity on the face of the complaint, * * *."

It has been argued that plaintiffs have now, due to the lapse of time, lost their opportunity to litigate the legality of the search and seizure before the Revenue Commissioner, and thence through the courts. Whether they have or have not lost such right, in view of their stipulation with the Commissioner with respect to his making no disposition of the liquor before the termination of this litigation, is not for us to determine. However, plaintiffs are presumed to have been familiar with the administrative procedure set up by Act 423 of 1947, and when they elected to ignore that procedure and come into this court, they assumed the risk that an adverse decision here might leave them without a remedy before the State's administrative tribunal.

Let plaintiffs' complaint be dismissed.